**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LAURA E. KEELING, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| COLLECTION PROFESSIONALS, INC., | ) |
| ROBERT B. STEELE, and APLINGTON, | ) |
| KAUFMAN, McCLINTOCK, STEELE | ) |
| & BARRY, LTD., | ) |
| | ) |
| DEFENDANTS. | ) |

## COMPLAINT

Plaintiff, Laura E. Keeling, brings this action to secure redress from unlawful credit and collection practices engaged in by Defendants Collection Professionals, Inc., Robert B. Steele, and Aplington, Kaufman, McClintock, Steele, and Barry, Ltd. Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and Collection Agency Act, 225 ILCS 425/1 *et seq.*

## VENUE AND JURISDICTION

1.     Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 42 U.S.C. 1983, and 28 U.S.C. §§ 1331, 1337, and 1367, as Defendants do business in the State of Illinois and because a material portion of the events at issue occurred in this District.

2.     Venue in this District is proper under 28 U.S.C. § 1391(b) because Defendants' collection demands were received here, a material portion of the events at issue occurred in this District, and Defendants reside and transact business here.

1

## PARTIES

3.    Plaintiff, Laura Keeling, ("Plaintiff"), is an individual and resident of Bureau County, Illinois, and a "consumer" as defined at 15 U.S.C. § 1692a(3) of the FDCPA.

4.    At all times relevant hereto, Plaintiff resided at 321 E. Iowa Street, in Spring Valley, Il. 61362.

5.    Defendant, Collection Professionals, Inc., ("CP") is a bad debt buyer and/or assignee that regularly collects defaulted consumer debts by mail, telephone and via filing lawsuits, on behalf of itself and others, and is thus a "debt collector" as that term is understood in the FDCPA, § 1692a(6).

6.    CP's principal business purpose is the collection of defaulted consumer debt through the mails and interstate commerce, such as credit reporting, as well as via litigation, and is thus a "debt collector" as that term is understood in the FDCPA, § 1692a(6).

7.    CP regularly collects defaulted and/or delinquent medical debts on behalf of others.

8.    CP collected or sought to collect over 1,000 defaulted and/or delinquent medical debts in the year 2021, on behalf of its clients.

9.    CP maintains a collection agency license from the State of Illinois.

10.    Robert B. Steele ("Steele") is an attorney licensed in the State of Illinois.

11.    Steele regularly collects defaulted consumer debts by mail, telephone and via filing lawsuits, on behalf of himself and others, and is thus a "debt collector" as that term is understood in the FDCPA, § 1692a(6).

12.     Steele regularly directs consumers from which he seeks to collect debts to write checks out to him personally, specifically to "Robert B. Steele, P.O. Box 517, LaSalle, Illinois, 61301", though he is a principal of Aplington, Kaufman, McClintock, Steele, and Barry, Ltd.

13.     Steele regularly represents creditors and/or assignees of bad debts, such as CP, in connection with the collection of defaulted consumer debts from consumers.

14.     Aplington, Kaufman, McClintock, Steele, and Barry, Ltd. ("Aplington") is engaged in the business of a law firm, using the mails, courts and telephone to collect defaulted consumer debts originally owed to others.

15.     Aplington regularly collects or attempts to collect defaulted consumer debts due or asserted to be due another, and is a debt collector as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

16.     In the year 2021, Aplington filed over 100 lawsuits on behalf of CP to collect defaulted and/or delinquent consumer debts.

## STANDING

17.     Plaintiff has Article III standing because, *inter alia*, Defendants Steele, CP and Aplington failed to provide Plaintiff with required information about the creditors to which the alleged debt is purported to be owed, the amount of the alleged debt, and her right to contest or request verification of the debt/ascertain the identity of the original creditor, placing her at a distinct disadvantage in dealing with her alleged obligations. If she had known about her rights, she would have timely disputed and sought verification of the debts—thereby requiring CP, Steele, and Aplington to cease litigating the collection action they filed against her and obtain verification, or potentially preventing

3

the filing of said action altogether. *Lavallee v. Med-1 Solutions, LLC*, 932 F.3d 1049 (7th Cir. 2019).

18.     Plaintiff has Article III standing for the further reason that she was forced to pay money and spend substantial time to defend against a false claim by CP as well as a spurious allegation that attorney fees were owed by her, as CP did not have a legal right to sue Plaintiff on the basis it alleged, nor a legal or factual basis to sue for allegedly overdue attorney fees and costs which it falsely claimed were already due and owing. Defendants' false allegations and false claim caused Plaintiff severe emotional distress, loss of time, and financial loss and thus a concrete injury, necessitating that Plaintiff pay money to an attorney and to the State Action court to defend the false claim.

## FACTS

19.     Plaintiff was alleged by CP, Steele and Aplington to incur various medical debts for non-elective health care.

20.     The obligations were thereafter declared to be in default.

21.     Plaintiff thus incurred an alleged obligation ("alleged debt") as that term is understood under § 1692a (5).

22.     The alleged debt was not incurred in connection with Plaintiff's employment, and/or in connection with any business matter.

23.     The alleged debt stems from assignments made from various creditors to CP, for medical care asserted by CP to be given to Plaintiff.

24.     CP alleges to have been assigned the alleged debt via the execution of three documents, each titled "Assignment of Claim for Collection".

25.     Each "Assignment" listed Plaintiff as the "Debtor".

4

26.     CP thereafter hired Steele and Aplington to collect the alleged debt from the Plaintiff and her ex-husband, by filing an action in Bureau County, Illinois.

27.     Specifically, on January 20, 2022, Steele and/or Aplington, on behalf of CP, filed a lawsuit against Plaintiff titled *Collection Professionals, Inc. v. Laura E. Keeling and David A. Keeling,* Case No. 2022SC21, in the Circuit Court of The Thirteenth Judicial Circuit, Bureau County, Illinois ("State Action"). (Exhibit A, Complaint and Summons).

28.     The State Action complaint included the three "Assignments".

29.     The first assignment was from Illinois Valley Community Hospital, Inc., to Collection Professionals, Inc., for an alleged debt in the amount of $1890.76. (Exhibit A, Complaint and Summons).

30.     The "Debtor" listed on the assignment was Plaintiff "Laura Keeling", although she did not incur the alleged debt.

31.     Defendants attach a "General Consent and Financial Agreement" that purports to authorize the collection of the alleged debt from Plaintiff, in addition to "reasonable attorney fees, court costs, and collection expense".  (Exhibit A, Complaint and Summons).

32.     The General Consent and Financial Agreement does not authorize the collection of said amounts from Plaintiff, however, as it was not signed by her and relates to an alleged debt that she did not originate, for medical care that she did not receive.

33.     A second assignment was from "IVCH Medical Group Clinics" to Collection Professionals, Inc., for an alleged debt in the amount of $97.00. (Exhibit A, Complaint and Summons).

34.     The "Debtor" listed on the assignment was "Laura Keeling", although she did not incur the alleged debt.

35.     CP, Aplington and Steele misrepresented that Plaintiff was the "Debtor", and had no legal or factual basis to collect the obligation from Plaintiff via the filing of the State Action complaint.

36.     Each assignment contained within the State Action complaint alleges "2. That the services or merchandise upon which the claim is based were sold, furnished and delivered to Debtor at Debtor's request." (Exhibit A, Complaint and Summons).

37.     However, the services or merchandise, upon which the claim is based, were not sold, furnished and/or delivered to Plaintiff at her request.

38.     Thus, the statement that the claim is based on services or merchandise provided to the Plaintiff at her request is false, and calculated to fool Plaintiff into believing that the alleged debt was incurred as a result of *her* actions in requesting and receiving medical care.

39.     15 U.S.C. § 1692e of the FDCPA provides as follows:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**. . . (2) The false representation of—**

> **(A)    the character, amount, or legal status of any debt; or…**

> **(B)    any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.**

6

**. . . (5) The threat to take any action that cannot legally be taken or that is not intended to be taken**

**. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

40.     Plaintiff was not the "Debtor" as listed in the assignments, and CP, Steele, and Aplington thus misrepresented the status, character and amount of the alleged debt, in violation of 15 U.S.C. § 1692e(2).

41.     CP, Steele, and Aplington violated the FDCPA, 15 U.S.C. §§ 1692e(2) and 1692e(10) by misrepresenting the amount and status of the alleged debt, including that she was the "Debtor", by asserting that the services or merchandise that comprise the claim were provided to her at her request, and by seeking to collect the alleged debt from Plaintiff via litigation via the false premise that Plaintiff requested the services and/or merchandise that is the basis of the claim.

42.     15 U.S.C. § 1692g of the FDCPA provides in part as follows:

**(a) Notice of debt; contents**

**Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—**

**(1) the amount of the debt;**
**(2) the name of the creditor to whom the debt is owed;**
**(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**
**(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**

7

**(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

**(b) Disputed debts**

**If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.**

43.     The Fair Debt Collection Practices Act thus requires a debt collector to give a written notice to a consumer within five days of its initial communication with said consumer, or his attorney. 15 U.S.C. § 1692g(a). That notice must include, among other things, a description of two mechanisms that the debtor can use to verify her debt. First, a consumer can notify the debt collector "in writing" that she disputes all or part of the debt, which obligates the debt collector to obtain verification of the debt and mail a copy to the debtor. *Id.* § 1692g(a)(4). A failure to dispute the debt within 30 days means that the debt collector will assume that the debt is valid. *Id.* § 1692g(a)(3).

44.     A consumer can also make a "written request" that the debt collector provide her with the name and address of the original creditor, which the debt collector

must do if a different creditor currently holds the debt. *Id.* § 1692g(a)(5).

45.     A debt collector must cease collection of a debt, by litigation or otherwise, if a consumer disputes a debt in writing within 30 days of the date he receives a Notice of Debt, until or unless the collector mails verification of the debt to the consumer. § 1692g(b).

46.     After being served with the complaint and summons in the State Action, Plaintiff retained and paid an attorney to represent her as to the alleged debt and State Action, which alleged a false claim as to Plaintiff, and she expended time and money in addressing the false claim and the failure of Defendants to provide her material information regarding the alleged debt.

47.     Plaintiff's counsel thereafter informed Steele that he represented the Plaintiff.

48.     Thereafter, on March 16, 2022, Steele placed a telephone call to Plaintiff's counsel in connection with the collection of the alleged debt, and a conversation ensued regarding the alleged debt.

49.     The telephone call was the initial communication made by Steele and/or Aplington to Plaintiff (via her counsel) regarding the collection of the alleged debt.

50.      Steele and/or Aplington was required to mail Plaintiff's counsel a Notice of Debt within five days of March 16, 2022.

51.     Defendants Steele, and Aplington failed to provide Plaintiff (via her attorney) with required information regarding her alleged debt within five days of their initial communication with her counsel—a "Notice of Debt" under section 1692g of the FDCPA—which would have informed Plaintiff of the amount of debt sought and the

9

name of the alleged creditors to which she owed money.

52.     Plaintiff experienced a concrete injury as a result of the Notice of Debt not being mailed by Steele and/or Aplington to her attorney, as Plaintiff would have exercised her right to request the identity of the original creditors and dispute the alleged debt in writing within 30 days of her receipt of a Notice of Debt by Steele and/or Aplington, which would have halted the State Action collection suit, or prevented it from proceeding altogether.

53.     Defendants' failure to provide Plaintiff a Notice of Debt thus impaired her ability to use the information, that was required to be contained therein, for a substantive purpose that the statute envisioned.

54.     Defendants' failure to provide information negatively affected Plaintiff's handling of her debts as she is to this date uncertain of the amounts which Defendants are seeking to collect from her, the identity of the alleged creditors who assigned the alleged debt, and the basis for and origin of the alleged debts.

55.     An unsophisticated consumer would be unable to ascertain the amount and origin and amount of her debts, and she would have her legal right to obtain verification of the alleged debt and/or dispute the same taken away, as a result of Steele and/or Aplington's failure to provide a Notice of Debt within five days of the initial communication with her, regarding an alleged debt.

56.     Section 1692f of the FDCPA provides as follows:

> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.**

57.     Defendants CP, Steele and Aplington sought to collect money from Plaintiff that was neither authorized by law nor by any agreement that created the alleged debt.

58.     Specifically, CP, Steele and Aplington did not have the legal right to collect the alleged debt sought via the allegations contained in the State Action complaint.

59.     Defendants violated sections 1692e and 1692f of the FDCPA thereby.

60.     CP, through Steele and Aplington, claimed in the State Action complaint that attorney fees were already due and owing, though no court has awarded said fees to CP.

61.     CP, through Steele and Aplington, claimed in the State Action complaint that court costs were already due and owing in an amount certain, though no court has awarded said fees to CP.

62.     No judgment has been entered in CP's collection action in state court.

63.     No court has ever ordered Plaintiff to pay the attorney's fees that her alleged creditor alleged to have incurred in the course of collecting her alleged outstanding debt.

64.     No court has ordered her to pay court costs to CP.

65.     It would have been inaccurate, then, to tell her that the debt she owed already included $350 in attorney fees as well as court costs—that were already owed.

66.     By telling her that her balance already included the attorney fees and court costs, and that CP has previously demanded payment of the same, CP represented

11

to Plaintiff that she was obligated to repay both the alleged debt and CP's attorney fees and court costs.

67.     Plaintiff was not legally required to pay the $350 stated as being owed in attorney fees, nor court costs, and as a reasonable, unsophisticated consumer, there is no reason she would have known as much when CP indicated otherwise.

68.     CP, through Steele and Aplington, thus misrepresented that an amount was already due and owing that was not due and owing, not authorized by the agreement creating the alleged debt, nor allowed by law, in violation of sections 1692e and 1692f of the FDCPA.

69.     Moreover, the State Action complaint reads that "defendant is indebted to plaintiff" in various amounts, which includes attorney fees of $350.

70.     The complaint goes on to read that "plaintiff has demanded payment of said sum; that the defendant refused to pay the same…".

71.     The statement that CP had previously demanded payment of the amounts claimed, which include $350 in attorney fees, is false.

72.     Assuming arguendo that it were true, any attempt by CP to collect $350 in attorney fees before the complaint were filed and before such fees were awarded to CP by the court would have violated the FDCPA, sections 1692e and 1692f.

73.     Plaintiff was fooled into believing that she already owed attorney fees and court costs to CP at the time the State Action complaint and summons were filed, as a result of CP's statements in the complaint.

74.     An unsophisticated consumer would be fooled into believing that she already owed attorney fees and court costs to CP, as a result of CP's statement in the complaint.

75. Plaintiff would have sought to resolve the alleged debt to buy peace, as she always previously had with Steele and Aplington, had Defendants not already added attorney fees and costs to the alleged debt, among other false amounts, and stated that said amounts were already owed.

76. Plaintiff would not have had to pay an appearance fee and/or hire and pay an attorney had Defendants told the truth about the amount she owed, including the allegedly "past due" status of attorney fees and costs.

77. Assuming *arguendo* that the obligations sought to be collected by Defendants were even owed by Plaintiff, Defendants sought to collect a greatly inflated amount from Plaintiff.

78. Specifically, on March 17, 2022, Steele submitted a draft order to the State Action Court, and later to Plaintiff, that indicated that Plaintiff owed "$3,063.73 plus $356.25 in costs." (Exhibit B, Order).

79. CP's complaint, however, only seeks "$2,523.76 plus court costs". (Exhibit A, Complaint).

80. There is no legal or factual basis for CP to seek to collect $539.97 more than indicated in the prayer for relief listed in the State Action complaint, and Defendants violated the FDCPA, sections 1692e and 1692f thereby.

81. Plaintiff hired and paid an attorney due to Defendants' attempt to collect a false claim.

82. Plaintiff paid an appearance fee to the State Action Court as a result of Defendants' misrepresentations, specifically to defend against a false claim.

83. Plaintiff expended time and money in addressing CP, Steele, and

Aplington's false claim against her, and was forced to defend against the inflated claim when she instead would have sought to resolve the obligation.

84.     Specifically, on May 19, 2022, Plaintiff's counsel Mario Kasalo e-filed and paid for an appearance in the State Action on behalf of Plaintiff.

85.     On that date, Plaintiff's counsel sent a copy of the appearance and a motion to quash to Steele via email and US mail, postage prepaid.

86.     Steele received a copy of the appearance on May 19, 2022, and the mailed copy sometime thereafter.

87.     A video hearing was thereafter held in the State Action on May 19, 2022.

88.     At the video hearing was held in the State Action on May 19, 2022, Plaintiff's counsel informed both the Court and Steele that he is appearing on behalf of Plaintiff in the State Action, and that he had filed an appearance on behalf of Plaintiff.

89.      On May 19, 2022 and thereafter, Steele was aware that Plaintiff was represented by an attorney in the State Action, whose address he also knew.

90.     Despite this fact, on July 12, 2022, Steele and Aplington, on behalf of CP, mailed various motions and a notice directly to Plaintiff, in connection with the collection of the alleged debt, instead of to her attorney. (Exhibit C, Envelope addressed to Plaintiff, but listing the address of her ex-husband).

91.      Section 1692c of the FDCPA provides in part as follows:

**a) Communication with the consumer generally**

**Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt –**

**. . .**

> **(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or**
>
> **. . .**

92.      CP, Steele, and Aplington violated the FDCPA, 15 U.S.C. § 1692c(a)(2) when Steele and Aplington, on behalf of CP, mailed motions and a notice filed in the State Action in connection with the collection of the alleged debt, directly to Plaintiff's ex-husband,  though each was aware that she was represented by an attorney with respect to the alleged debt and in the State Action, whose name and address they knew.

93.      Plaintiff suffered severe emotional distress as a result of Defendants' actions, including physical manifestations of stress such as loss of sleep, as she believed that she was no longer represented by an attorney in the State Action upon receiving the letter, since her counsel informed her upon being retained that all communications from Defendants to Plaintiff will stop as long as she is represented by counsel in the State Action.

94.      Plaintiff suffered severe emotional distress as a result of Defendant's actions, including physical manifestations of stress such as loss of sleep, for the further reason that she believed that he would have to personally appear for the hearing listed in the documents, and thus miss work.

95.      Further, Steele and Aplington, on behalf of CP, mailed documents filed in the State Action in an envelope where the envelope was addressed to Plaintiff's name, but listed *her ex-husband's* physical address, where she did not reside. (Exhibit C, Envelope addressed to Plaintiff, but listing the physical address of her ex-husband).

96.     Similarly, Steele and Aplington, on behalf of CP, mailed documents filed in the State Action in an envelope where the envelope was addressed to Plaintiff's ex-husband but listed *Plaintiff's* physical address, where Plaintiff's ex-husband did not reside.

97.     As a result, Plaintiff received documents that should have been mailed to her ex-husband David Keeling, and David Keeling received documents that should have been mailed to Plaintiff, which they exchanged at a remote location after opening and reading the documents contained in each letter.

98.     Section 1692c of the FDCPA provides in part as follows:

**(b) Communication with third Parties**

**Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.**

99.     CP, Steele, and Aplington violated the FDCPA, 15 U.S.C. § 1692c(b) when Steele and Aplington, on behalf of CP, mailed motions and a notice filed in the State Action in connection with the collection of the alleged debt, directly to Plaintiff's ex-husband's address (who is a third party), that related to Plaintiff.

100.     Plaintiff suffered loss of sleep and headaches as a result of Defendants' illegal collection attempts of the alleged debt.

101.     Plaintiff also lost time and money due to the same, since she was forced to drive to an agreed location to exchange the wrongly-addressed letters with her ex-husband, expending gasoline and thus having to pay money as a result.

102.     Plaintiff thus expended time and money in having to address Defendants' improper actions, causing her injury.

103.     Defendants were aware at all times relevant hereto of Plaintiff's and her ex-husband David Keeling's correct address, since Defendants placed the correct addresses of each on the summonses that were filed in the State Action.

104.     Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

105.     CP bears the burden of monitoring the activities of those it enlists to collect debts on its behalf, including Aplington and Steele, and is liable for the actions taken to collect a debt on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 323 (7th Cir. 2016).

## COUNT I-FAIR DEBT COLLECTION PRACTICES ACT-ALL DEFENDANTS

106.     Plaintiff realleges and incorporates paragraphs 1-105 into this count.

107.     Defendants acted as debt collectors, as defined by the FDCPA, with respect to Plaintiff, as they each attempted to collect a defaulted consumer debt via their respective actions, specifically described *supra*.

108.      Defendants violated section 1692e by alleging "That the services or merchandise upon which the claim is based were sold, furnished and delivered to Debtor at Debtor's request.", as this is false.

109.     Defendants violated Section 1692 e(2)(A) and e(2)(B) by misrepresenting that Plaintiff already owed attorney fees and costs, by seeking to collect a false claim, and also by misrepresenting that Plaintiff was the "Debtor" in the assignments that are the

17

subject of this lawsuit, as well as that. "That the services or merchandise upon which the claim is based were sold, furnished and delivered to Debtor at Debtor's request."

110.     Section 1692e(5) of the FDCPA proscribes the threat to take any action that cannot legally be taken or that is not intended to be taken.

111.     Defendants violated section 1692e(5) by threatening to collect attorney fees and costs, since there is no legal or factual basis to do so.

112.     Section 1692e(10) of the FDCPA proscribes "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

113.     Defendants violated Section 1692e(10) by misrepresenting that they had the right to collect the alleged debt from Plaintiff and that she already owed attorney fees and costs.

114.      Section 1692f of the FDCPA states in relevant part that "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

115.     Section 1692f(1) proscribes "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

116.     Defendants violated Sections 1692f and 1692f(1) by seeking to collect attorney fees and court costs not authorized by any agreement creating the alleged debt, or permitted by law, and by misrepresenting that said fees and court costs were already due and owing prior to the filing of the complaint, when they were not.

117.     Steele and/or Aplington failed to mail Plaintiff's counsel a Notice of Debt within five days of its initial communication with her/her counsel regarding the alleged

debt, in violation of 15 U.S.C. § 1692g(a).

118.     Plaintiff was damaged and injured as a direct and proximate result of Defendants' conduct in that she was deprived of the ability to dispute the alleged debt, obtain the identity of the original creditor(s), and obtain verification (and thus also to halt the State Action litigation thereby), and incurred financial loss and lost time.

119.     Plaintiff suffered extreme emotional distress as a result of Defendants' illegal collection actions, and suffered loss of sleep and headaches as a consequence.

120.     Plaintiff lost time and money as a result of Defendants' illegal collection actions.

121.     At all times herein mentioned, Defendants are and were agents and/or joint venturers of each other, and in doing the acts alleged herein were acting within the course and scope of such agency.

122.     Each of the Defendants had actual and/or constructive knowledge of the acts of the other Defendants as described herein, and ratified, approved, joined in, acquiesced in, and/or authorized the acts of the other, and/or retained the benefits of said acts.

WHEREFORE, Plaintiff, Laura Keeling, asks that the Court enter judgment in her favor and against Defendants as follows:

(A)     Statutory damages from each Defendant pursuant to the FDCPA, 15 U.S.C. §1692(k)(a)(2);

(B)     Actual damages pursuant to the FDCPA, 15 U.S.C. §1692(k)(a)(1) ;

(C)     Reasonable attorney's fees and costs; and

(D)     Any other relief that this Court deems appropriate

and just under the circumstances.

## COUNT II—ILLINOIS COLLECTION AGENCY ACT—CP

123. Plaintiff realleges and incorporates paragraphs 1-122 into this Count.

124. CP is a "debt collector" as that term is defined by the Illinois Collection Agency Act ("ICAA"), as well as a "collection agency" and "debt buyer".

125. Plaintiff is a consumer from which CP sought to collect an alleged delinquent consumer debt.

126. Defendant CP attempted to enforce a right or remedy with knowledge or reason to know that the right or remedy doesn't exist, in violation of 225 ILCS 425/9(a)(24) of the Illinois Collection Agency Act, when it sought to collect money from Plaintiff without having a legal right to file suit against her to collect the same on the basis it alleged, and by stating the attorney fees were due and owing when they were not.

127. Defendant CP misrepresented the amount of the alleged debt, in violation of 225 ILCS 425/9(a)(30) of the Illinois Collection Agency Act.

128. Defendant CP represented that an existing debt may be increased by the addition of attorney's fees, investigation fees or any other fees or charges when such fees or charges may not legally be added to the existing debt, in violation of 225 ILCS 425/9(a)(31) of the Illinois Collection Agency Act.

129. Plaintiff was damaged by CP's illegal actions by having to pay money to an attorney and costs in the State Action to defend against a false claim alleged by Defendants, and she suffered extreme emotional distress as well a result of the actions of Defendants.

20

WHEREFORE, Plaintiff, Laura Keeling, asks that the Court enter judgment in her favor and against Defendants as follows:

(A)     Actual damages to be determined at trial;

(B)     Punitive damages to be determined at trial;

(C)     Reasonable attorneys' fees and costs pursuant to the ICAA;

(D)     Any other relief that this Court deems appropriate and just under the circumstances.

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,

By: */s/ Mario Kris Kasalo*
Mario Kris Kasalo
Attorney for Plaintiff
**The Law Office of M. Kris Kasalo, Ltd.**
4950 Madison St., P.O. Box 1425
Skokie, IL 60077
tel 312.726.6160
fax 312.698.5054
mario.kasalo@kasalolaw.com


## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


By: */s/ Mario Kris Kasalo*
Mario Kris Kasalo

## **JURY DEMAND**

Plaintiff demands trial by jury.


By: /s/ *Mario Kris Kasalo*
Mario Kris Kasalo

**EXHIBIT A**

EXHIBIT A

IN THE CIRCUIT COURT OF THE 13TH JUDICIAL CIRCUIT
BUREAU COUNTY, ILLINOIS
Plaintiff(s)
COLLECTION PROFESSIONALS, INC

        Vs                                          No    2022SC21

Defendant(s)
LAURA E KEELING
DAVID A KEELING

### *SUMMONS*

To each defendant: **DAVID A KEELING, 2256 N 14TH RD, , STREATOR, IL, 61364**

You are hereby summoned and required to appear **IN PERSON** before this court at the BUREAU County Courthouse, 700 SOUTH MAIN ST., ,PRINCETON,IL,61356 Room **210 at 8:30AM on 3/17/2022** to answer the complaint in this case, a copy of which is hereto attached. **IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.**

"You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at 815-872-2001 or visit their website at https://circuitclerk.bureaucounty-il.gov/ to find out how to do this.

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org. If you are unable to pay your court fees, you can apply for a fee waiver, for information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also as your local circuit clerk's office for a fee waiver application."

### NOTICE to PLAINTIFF or PLAINTIFF'S ATTORNEY:

When preparing the above **SUMMONS**, you will insert a return day not less than 40 or more than 61 days after the date of issuance.

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service, **AND NOT LESS THAN 21 DAYS BEFORE DAY OF APPEARANCE**. If service cannot be made, this summons shall be returned so endorsed.

1/20/2022

(Seal of court)               WITNESS, _____, 20____

*Dawn M. Reglin*
(Clerk of the Circuit Court)

Name: Robert B. Steele ARDC#2712407, robert.steele@akmsb.com
Attorney for: Plaintiff
Address: P.O. Box 517
City: LaSalle, IL 61301
Telephone: (815) 224-3252
7000035381

This is an attempt to collect a debt, and any information obtained will be used for that purpose. This communication is from a debt collector.

IMPORTANT INFORMATION FOR THE PERSON RECEIVING THIS FORM:

You have been sued.

Follow the instruction below on how to appear/answer.

- If you do not appear, the court may decide the case without hearing from you and enter a judgment against you for what Plaintiff is asking.
- Your written *Appearance* must be filed on time and in the proper form.
- Forms for a written *Appearance* are available here: illinoiscourts.gov/forms/approved/default.asp.
- If Plaintiff is suing you for $10,000 or less, you do not need to file an *Answer/Response* unless the judge orders you to do so.
- You may file an *Answer/Response* found here: illinoiscourts.gov/forms/approved/default.asp.
- If you cannot afford to pay the fee for filing your *Appearance* and *Answer/Response*, ask the Circuit Clerk for an *Application for Waiver of Court Fees* found here: illionscourts.gov/forms/approved/default.asp.
- Read all the documents attached to this *Small Claims Summons*

COMPLAINT - Small Claims

FILED
Bureau County, Illinois
1/20/2022 11:27 AM
Dawn Reglin
Clerk of the Circuit Court

=====================================================================
IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT, BUREAU COUNTY, ILLINOIS

COMPLAINT

NO. _____ 2022SC21

COLLECTION PROFESSIONALS, INC.

LAURA E. KEELING

_____

DAVID A. KEELING

_____

**Plaintiff(s)**

_____

**Defendant(s)**

Attorney: APLINGTON, KAUFMAN,
MCCLINTOCK, STEELE & BARRY, LTD.

Attorney:

## SMALL CLAIM COMPLAINT

I, the undersigned, claim that the defendant is indebted to the plaintiff in the sum of
TWO THOUSAND FIVE HUNDRED TWENTY-THREE & 76/100 +COURT COSTS Dollars ($ 2,523.76 ) + COURT COSTS

for ASSIGNEE OF IVCH MEDICAL GROUP/UTICA MEDICAL CLINIC, VARIOUS DATES OF SERVICE –

$97.00; ASSIGNEE OF INSTITUTE FOR PERSONAL DEVELOPMENT, VARIOUS DATES OF SERVICE –

$186.00; ASSIGNEE OF ILLINOIS VALLEY COMMUNITY HOSPITAL, INC., VARIOUS DATES OF

SERVICE – $1,890.76; ATTORNEY FEES – $350.00
COPY OF ASSIGNMENTS AND FINANCIAL AGREEMENT ATTACHED HERETO.

and that plaintiff has demanded payment of said sum; that the defendant refused to pay the

same and no part thereof has been paid; that the defendant resides at _____

(Laura) 321 EAST IOWA STREET, SPRING VALLEY IL 61362              815-303-4285
(David) 2256 NORTH FOURTEENTH ROAD, STREATOR, IL 61364  Phone No.  815-303-4286  ;

that plaintiff resides at ____ 723 FIRST STREET, LASALLE IL 61301

Phone No. _ 815-223-0804 _____, in the State of Illinois.

ROBERT B. STEELE,    (Signature of Plaintiff)'s Attorney
robert.steele@akmsb.com   ARDC #2712407

## AFFIDAVIT

GREG L. HIMELICK, CHIEF OPERATIONS OFFICER ____, on oath, states that the allegations contained
in this complaint are true.

Plaintiff

Subscribed and sworn to before me this
____ day of ____ , 20__

_____
(Notary Public)  (Clerk of the Court)

-ICIAL SEAL
NICOLE SCHOLLE
NOTARY PUBLIC - STATE OF ILLINOIS
COMMISSION EXPIRES 03/19/22

**BUREAU COUNTY CLERK OF THE CIRCUIT COURT**
**700 South Main Street, Princeton, Illinois 61356**

## ASSIGNMENT OF CLAIM FOR COLLECTION

Debtor(s) _____LAURA KEELING_____

Amount Owed: ___$ 1890.76___

     For good and valuable consideration, __ILLINOIS VALLEY COMMUNITY HOSPITAL, INC.,__ (hereinafter "Creditor") as owner and holder of the above claim against Debtor(s), hereby assigns all rights and interest in the above claim to COLLECTION PROFESSIONALS, INC. (hereinafter "Collection Agency" or Agency"). It is expressly agreed that the Collection Agency may initiate proceedings in its own name or take any lawful action deemed necessary by it to obtain satisfaction of the claim.

     The parties acknowledge that this assignment is pursuant to 225 ILCS 425/8b of the Illinois Collection Agency Act. Collection Agency agrees to pay to Creditor60 % of the net proceeds that Collection Agency recovers from Debtor. The net proceeds shall be defined as all payments by Debtor to Agency upon the claim, excluding payments made upon judgment interest and **after** reimbursement to Agency of any sums advanced or expended by Agency for court costs, service fees or other disbursements or expenses necessarily and reasonably incurred by Agency in the prosecution of collection of this account.

Creditor hereby warrants as follows:

1. Creditor is valid owner of said claim, which debt has not been previously assigned or conveyed. Further the debt has not been discharged by bankruptcy or release.
2. That the services or merchandise upon which the claim is based were sold, furnished and delivered to Debtor at Debtor's request. That the charges made were reasonable or agreed upon prices.
3. That Collection Agency shall not be required to assume any obligation or liability Creditor may owe Debtor.
4. That Creditor shall take no action to discharge the debt or hinder the collection of the debt after the effective date of this Assignment to Agency.
5. That allowing all proper credits and setoffs, there is due and owing from the Debtors(s) the sum of _$ 1890.76_ as hereinabove set forth.
6. That this Assignment is a voluntary assignment of Creditor's account against Debtor.
7. Creditor agrees to cooperate as necessary with Agency in the collection of this matter and supply Agency with information, documents or materials required to properly collect the claim, including witnesses as needed for trial upon the claim.
8. That the undersigned has the authority to execute and acknowledge this Assignment on behalf of Creditor.

The effective date of this Assignment is ___JANUARY 3, 2020___

By: ___Sara Pingioni_____
     Signature                            Print Name

Creditor or its Authorized Representative ILLINOIS VALLEY COMMUNITY HOSPITAL, INC.,

### Please Return to:
**CPI, PO Box 416, 723 First St., Lasalle IL 61301  815-223-0804 FAX: 815-223-0896**
This is an attempt to collect a debt and any information obtained will be used for that purpose

 

**Illinois Valley Community Hospital**
925 West Street, Peru, Illinois 61354
815-223-3300
Caring Professionals

KEELING, DAVID ALAN

Visit ID: 11317879

MRN: 119099

## GENERAL CONSENT AND FINANCIAL AGREEMENT

I, _____, acting on behalf of **KEELING, DAVID** suffering from a condition requiring hospital/emergency care, hereby voluntarily consent to such care.

**CONSENT FOR TREATMENT:** I consent to x-ray examinations, laboratory procedures, medical treatment, emergency treatment, or other hospital services including nursing care rendered me under general and special instruction of the attending, consulting or emergency department physician, who is in charge of my care and treatment. I understand that photographs, videotapes, digital or other images may be recorded to document my condition, care and treatment, and I consent to this. I understand that IVCH will retain ownership rights to these photographs, videotapes, digital or other images; but that I will be allowed access to view them or obtain copies. I understand these images will be stored in a secure manner that will protect my privacy and that they will be kept for the time period required by law or outlined in the IVCH policy. The Hospital is not responsible for acts of care and treatment ordered by the physician which are properly performed by Hospital personnel pursuant to his instruction. In addition, I authorize Illinois Valley Community Hospital (IVCH) to dispose of the excised tissue, parts or organs resulting from procedures for which I am being hospitalized.

**I understand that medical services are provided by physicians who are independent practitioners and are not employees or agents of IVCH.**

I further acknowledge that my admission and discharge are arranged by the attending physician.

**HOSPITAL SERVICES:** I recognize that the practice of medicine and surgery is not an exact science and acknowledge that no guarantees have been made as to the results which may be obtained from the hospital care and treatment and rendition of medical services by the attending physician, his or her assistants, or designated on-call or covering physicians.

**RELEASE OF INFORMATION:** I agree that IVCH may release hospital information about this episode of care, including copies of all requested medical records to any insurance company, medical review program contracting with the third-party payors and any other agency responsible for paying for services, and the attending physician for follow-up care. Images that identify me will be released and/or used outside the institution only upon written authorization from me or my legal representative, or as required by law. I acknowledge that IVCH holds no liability in how this information is used by payors.

**ASSIGNMENT OF INSURANCE BENEFITS:** In the event I am entitled to benefits arising out of any policy insuring me, those benefits are hereby assigned to the hospital and/or physician for application on my bill.

**FINANCIAL AGREEMENT:** The undersigned agrees, whether he/she signs as an agent or as a patient, that in consideration of the services to be rendered to the patient, he hereby obligates himself to pay the account of the Hospital in accordance with the regular rates and terms of the Hospital. The undersigned further agrees the account is to be paid in full within thirty (30) days from the date of discharge unless he/she makes arrangements satisfactory to the Hospital. Should the account be referred to any attorney or collection agency for collection the undersigned agrees to pay all reasonable attorney fees, court costs and collection expense.

GENERAL CONSENT AND FINANCIAL AGREEMENT
DATE   01/06/2020
Page 1 of 2
1GENER
HEALTH INFORMATION MANAGEMENT
Printed: 10/14/2017 3:06 PM
020/Revised: December 2009





KEELING, DAVID ALAN

Illinois Valley Community Hospital
925 West Street, Peru, Illinois 61354
815-223-3300
Caring Professionals

Visit ID: 11317879

MRN: 119099

---

*In addition, Medicare and Champus Patients:*

**MEDICARE PATIENT'S CERTIFICATION, AUTHORIZATION TO RELEASE INFORMATION, AND PAYMENT REQUEST.** I certify that the information given by me in applying for payment under TITLE XVIII of the Social Security Act is correct. I authorize any holder of medical or other information about me to release to the Social Security Administration and/or the Medicare Program or its intermediaries or carriers or to the Professional Standards Review Organizations any information needed for this or a related Medicare claim. I request that payment of authorized benefits be made on my behalf.

**Inpatients Only**
**IMPORTANT MESSAGE FROM MEDICARE:** I acknowledge receipt of the IMPORTANT MESSAGE FROM MEDICARE which does not waive any of my rights to request a review or make me liable for any payment.                     Issuing Clerk Initials_____

**IMPORTANT MESSAGE FROM CHAMPUS:** I acknowledge receipt of the IMPORTANT MESSAGE FROM CHAMPUS which does not waive any of my rights to request a review or make me liable for any payment.                     Issuing Clerk Initials_____

---

I have read this form and I am satisfied that I understand its content and significance.

_____  10/14/2017 3:06 PM          _____  10/14/2017 3:06 PM
Patient's Signature            Date/Time                 Other Required Signature      Date/Time

_____                              _____
Signature of Witness                                 Relationship to Above Patient

If patient did not sign this consent or if someone other than the patient signed, document the reason below:

---

GENERAL CONSENT AND FINANCIAL AGREEMENT  01/06/2020

1GENER

Page 2 of 2

HEALTH INFORMATION MANAGEMENT
Printed: 10/14/2017 3:06 PM
020/Revised: December 2009

## ASSIGNMENT OF CLAIM FOR COLLECTION

Debtor(s) _____ LAURA KEELING

Amount Owed: _____ $97.00

For good and valuable consideration, IVCH MEDICAL GROUP CLINIC(S), (hereinafter "Creditor") as owner and holder of the above claim against Debtor(s), hereby assigns all rights and interest in the above claim to COLLECTION PROFESSIONALS, INC. (hereinafter "Collection Agency" or Agency"). It is expressly agreed that the Collection Agency may initiate proceedings in its own name or take any lawful action deemed necessary by it to obtain satisfaction of the claim.

The parties acknowledge that this assignment is pursuant to 225 ILCS 425/8b of the Illinois Collection Agency Act. Collection Agency agrees to pay to Creditor 60 % of the net proceeds that Collection Agency recovers from Debtor. The net proceeds shall be defined as all payments by Debtor to Agency upon the claim, excluding payments made upon judgment interest and **after** reimbursement to Agency of any sums advanced or expended by Agency for court costs, service fees or other disbursements or expenses necessarily and reasonably incurred by Agency in the prosecution of collection of this account.

Creditor hereby warrants as follows:

1. Creditor is valid owner of said claim, which debt has not been previously assigned or conveyed. Further the debt has not been discharged by bankruptcy or release.
2. That the services or merchandise upon which the claim is based were sold, furnished and delivered to Debtor at Debtor's request. That the charges made were reasonable or agreed upon prices.
3. That Collection Agency shall not be required to assume any obligation or liability Creditor may owe Debtor.
4. That Creditor shall take no action to discharge the debt or hinder the collection of the debt after the effective date of this Assignment to Agency.
5. That allowing all proper credits and setoffs, there is due and owing from the Debtors(s) the sum of __$97.00__ as hereinabove set forth.
6. That this Assignment is a voluntary assignment of Creditor's account against Debtor.
7. Creditor agrees to cooperate as necessary with Agency in the collection of this matter and supply Agency with information, documents or materials required to properly collect the claim, including witnesses as needed for trial upon the claim.
8. That the undersigned has the authority to execute and acknowledge this Assignment on behalf of Creditor.

The effective date of this Assignment is _____ JANUARY 3, 2020 _____

By: _____          Justine Arquebright
     Signature                                    Print Name

Creditor or its Authorized Representative  IVCH MEDICAL GROUP CLINIC(S)  Utica Ill, C.

**Please Return to:**

**CPI, PO Box 416, 723 First St., Lasalle IL 61301  815-223-0804 FAX: 815-223-0896**

This is an attempt to collect a debt and any information obtained will be used for that purpose

## ASSIGNMENT OF CLAIM FOR COLLECTION

Debtor(s) __LAURA KEELING__

Amount Owed: ___$186.00___

    For good and valuable consideration, INSTITUTE FOR PERSONAL DEVELOPMENT , (hereinafter "Creditor") as owner and holder of the above claim against Debtor(s), hereby assigns all rights and interest in the above claim to COLLECTION PROFESSIONALS, INC. (hereinafter "Collection Agency" or Agency"). It is expressly agreed that the Collection Agency may initiate proceedings in its own name or take any lawful action deemed necessary by it to obtain satisfaction of the claim.

    The parties acknowledge that this assignment is pursuant to 225 ILCS 425/8b of the Illinois Collection Agency Act. Collection Agency agrees to pay to Creditor 50% of the net proceeds that Collection Agency recovers from Debtor. The net proceeds shall be defined as all payments by Debtor to Agency upon the claim, excluding payments made upon judgment interest and **after** reimbursement to Agency of any sums advanced or expended by Agency for court costs, service fees or other disbursements or expenses necessarily and reasonably incurred by Agency in the prosecution of collection of this account.

Creditor hereby warrants as follows:

1. Creditor is valid owner of said claim, which debt has not been previously assigned or conveyed. Further the debt has not been discharged by bankruptcy or release.
2. That the services or merchandise upon which the claim is based were sold, furnished and delivered to Debtor at Debtor's request. That the charges made were reasonable or agreed upon prices.
3. That Collection Agency shall not be required to assume any obligation or liability Creditor may owe Debtor.
4. That Creditor shall take no action to discharge the debt or hinder the collection of the debt after the effective date of this Assignment to Agency.
5. That allowing all proper credits and setoffs, there is due and owing from the Debtors(s) the sum of __$186.00__ as hereinabove set forth.
6. That this Assignment is a voluntary assignment of Creditor's account against Debtor.
7. Creditor agrees to cooperate as necessary with Agency in the collection of this matter and supply Agency with information, documents or materials required to properly collect the claim, including witnesses as needed for trial upon the claim.
8. That the undersigned has the authority to execute and acknowledge this Assignment on behalf of Creditor.

The effective date of this Assignment is ___JANUARY 3, 2020___

By: _____       Kristi Hamilton
    Signature                            Print Name

Creditor or its Authorized Representative ___INSTITUTE FOR PERSONAL DEVELOPMENT___

**Please Return to:**

**CPI, PO Box 416, 723 First St., Lasalle IL 61301 815-223-0804 FAX: 815-223-0896**

This is an attempt to collect a debt and any information obtained will be used for that purpose

**EXHIBIT B**

# IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## BUREAU COUNTY, ILLINOIS

COLLECTION PROFESSIONALS, INC. )
　　　　　　　　Plaintiff, )
　　　　　v. ) 　　　No. 2022-SC-21
　　　　　　　　　　　　　　)
LAURA E. KEELING )
DAVID A. KEELING )
　　　　　　　　Defendant(s). )

### ORDER

[X] Plaintiff appears/by attorney **ROBERT B. STEELE**.

[ ] Defendant appears/by attorney _____.

[ ] Defendant admits liability, judgment for Plaintiff against defendant in the sum of
$_____, plus costs $_____.

[ ] Cause set for trial on _____ at _____.M. Court Room _____
THIS IS THE ONLY NOTICE YOU WILL RECEIVE OF THE TRIAL DATE.

[ ] Cause continued on motion of _____ Plaintiff
　　　　　　　　　　　　　　　_____ Defendant to _____ at ____.M.
　　　　　　　　　　　　　　　_____ By Agreement

[X] Cause continued to 5/19/22 at 9:00 .M. for Status.

[ ] After trial: Judgment entered for Plaintiff against Defendant in the sum of
$_____ plus costs of suit.

[ ] Defendant is ordered to pay to Plaintiff the Sum of $_____ per week/month
commencing on the _____ day of _____, 20_____ and the
same amount on the _____ day of the week/month thereafter until
judgment, costs and statutory judgment interest are paid in full.
SHOULD THE DEFENDANT WILLFULLY REFUSE TO PAY, THIS ORDER
MAY BE ENFORCED BY CONTEMPT PROCEEDINGS. Failure to make
payments may result in further post judgment action including garnishment.
Payments to be made to Robert B Steele, P.O. Box 517, LaSalle, IL 61301.
Defendant: _____

[ ] Order to pay entered _____ is vacated.

[ ] After Trial: Judgment entered for Defendant: Not Guilty.

[ ] Ordered: _____
_____

[ ] The Defendant(s) having failed to appear (in person or remote) or otherwise
respond to the Summons served upon defendant(s), is/are found in default. It is
therefore ordered that Plaintiff have Judgment against the defendant(s) in the
sum of $3,063.73 plus costs of $356.25.

[ ] Cause called. Plaintiff fails to appear. Cause dismissed on Plaintiff's failure
to prosecute.

Date: 3/17/22

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　Judge

THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR.

M 3/21

**EXHIBIT C**

EXHIBIT C

PEORIA IL 616

12 JUL 2022 PM 1 T

APLINGTON, KAUFMAN,
McCLINTOCK, STEELE & BARRY, LTD.
ATTORNEYS AT LAW
160 MARQUETTE STREET, P.O. BOX 517
LA SALLE, ILLINOIS 61301-0517

LAURA E. KEELING
2256 N. 14TH RD.
STREATOR, IL 61364